IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DARNELL WILSON,     )
            )
   Petitioner,    )
            )
            )
  v.        ) Case No.12-CV-10059
            )
RICK HARRINGTON, Warden, Menard )
Correctional Center,    )
            )
   Respondent.    )

MEMORANDUM OPINION AND ORDER

At the conclusion of a bench trial on December 8, 2005, petitioner Darnell Wilson was found guilty of two counts of first-degree murder and one count of aggravated battery with a firearm. The trial court sentenced him to a mandatory term of natural life imprisonment for the murders of George Holliday and Lesley Coppage and a concurrent six-year term of imprisonment for the aggravated battery of Melvin Jefferson. Petitioner challenged his conviction without success in both direct appeals and post-conviction proceedings in the Illinois state courts. Petitioner now seeks a federal writ of habeas corpus based on the following nine claims: (1) that the trial court denied him due process and equal protection under the Fourteenth Amendment when it found there were independent bases for in-court

1

identifications of petitioner after suppressing line-up
identifications; (2) that his trial counsel's failure to
introduce evidence necessary for the trial court to rule properly
on the in-court identifications was ineffective assistance of
counsel; (3) that his trial counsel's failure to call alibi
witnesses also violated his right to effective trial counsel; (4)
that his conviction, secured through proof that was insufficient
to find that he was guilty beyond a reasonable doubt, violated
his due process rights under the Fourteenth Amendment; (5) that
the trial court's consideration of evidence that petitioner was
"guilty by association," including the consideration of hearsay
testimony, violated his Fourteenth Amendment right to due
process; (6) that petitioner is actually innocent; (7) that his
conviction violates the Fourth, Sixth, Eighth and Fourteenth
Amendments because it resulted from an unlawful detention that
was not supported by probable cause; (8) that his appellate
counsel was ineffective when he failed to raise an ineffective
assistance of counsel argument based on trial counsel's failure
to object to the constructive amendment to the indictment; and
(9) that his due process rights were violated when the State
knowingly presented perjured testimony. For the reasons stated
below, I deny his petition and decline to issue a certificate of
appealability.

The following facts are taken from the Illinois Appellate Court's Rule 23 Order affirming petitioner's conviction and sentence on direct appeal. *People v. Wilson*, No. 03-CR-23709 (Ill.App.Ct. December 8, 2008), Resp. Ans. Exh. A (hereinafter *"Wilson I"*).

This case concerns shootings that took place in front of a Chicago Housing Authority building. Petitioner, along with five codefendants, was charged with the first-degree murder of George Holiday and Lesley Coppage, as well as the aggravated battery with a firearm of Melvin Jefferson. Prior to trial, petitioner successfully filed a motion to suppress the lineup identifications of him on the ground that they were fruits of an illegal arrest. Once the trial court suppressed those identifications, the State moved for an attenuation hearing to determine if the witnesses who identified petitioner in the lineups had a basis on which to make in-court identifications independent of the tainted arrest. Following the hearing, the trial court concluded that the State witnesses, Melvin Jefferson and Eddie Jackson, had independent bases for their in-court identifications of petitioner based on their prior acquaintance at school and around the neighborhood. Subsequently, the court found that two additional State witnesses, Corey Strothers and

Anthony Hardy, also had independent bases for their in-court identifications of petitioner.

At trial the State's evidence against petitioner included eye witness testimony, corroborated by the testimony of other witnesses who saw petitioner fleeing the scene. Following his conviction, petitioner asserted various claims on direct appeal and in post-conviction proceedings. On direct appeal, the Illinois appellate court rejected each of the five claims petitioner advanced there: that there was no independent basis for the eye witnesses' in-court identification of petitioner, that petitioner's trial counsel was ineffective for failing to point out evidence necessary for the trial court to analyze whether there was an independent basis for the in-court identifications, that the trial court erred when it found petitioner guilty by association, that there was insufficient evidence to find petitioner guilty beyond a reasonable doubt, and that the trial court erred when it admitted the hearsay testimony of William Chambers. The Supreme Court of Illinois declined to hear his petition. In post-conviction proceedings, the Illinois Appellate Court rejected petitioner's claims that he was denied effective assistance of counsel when his attorney failed to call alibi witnesses and that he was actually innocent of the crimes for which he was convicted. The Illinois Supreme Court declined to hear that petition as well.

Under the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may not grant a state prisoner habeas relief unless the decision of the highest state court to adjudicate the petitioner's claims "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Smiley v. Thurmer*, 542 F.3d 574, 580 (7th Cir. 2008) (citing 28 U.S.C. § 2254(d)). And "[b]efore a federal court may grant habeas review to a state prisoner, the prisoner must exhaust his remedies in state court ..." by giving "the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." *O'Sullivan v. Boerckel*, 526 U.S. 838, 842, 119 S.Ct. 1728, 1731 (1999). Therefore, where a petitioner has failed "to present ... his federal habeas claims to the [Illinois Supreme Court] in a timely fashion" that failure "has resulted in a procedural default of those claims." *Id.* at 848.

### Procedural Default

The State argues that some of the petitioner's claims are procedurally barred. The procedural bar doctrine precludes a

federal court from reaching the merits of a habeas claim when

"the claim was not presented to the state courts and it is clear

that those courts would now hold the claim procedurally barred."

*Perruquet v. Briley*, 390 F.3d 505, 514 (7th Cir. 2004) (noting

that "when the habeas petitioner has failed to fairly present to

the state courts the claim on which he seeks relief in federal

court and the opportunity to raise that claim has passed, the

petitioner has defaulted that claim"). "Fair presentment ...

requires the petitioner to assert his federal claim through one

complete round of state-court review, either on direct appeal of

his conviction or in post conviction proceedings." *Lewis v.

Sternes*, 390 F.3d 1019, 1025 (7th Cir. 2004) (explaining that

"the petitioner must raise the issue at each and every level in

the state court system, including levels at which review is

discretionary rather than mandatory"). The State argues that the

doctrine of procedural default precludes me from reaching the

merits of petitioner's claims: (1) that his trial counsel's

failure to introduce evidence that the trial court needed to

determine whether the witnesses had independent bases for their

in-court identifications of petitioner amounted to ineffective

assistance of counsel; (2) that his appellate counsel's failure

to advance an ineffective assistance of counsel claim based on

the failure to object to the constructive amendment to the

indictment also amounted to a Sixth Amendment deprivation of

effective counsel; and (3) that his due process rights were violated when the Government knowingly presented perjured testimony at petitioner's trial.

A review of the state court records confirms that these claims are procedurally barred because petitioner failed to raise them before the Illinois Appellate Court or in his petition for leave to appeal ("PLA") to the Illinois Supreme Court. *See Guest v. McCann*, 474 F.3d 926, 930 (7th Cir. 2007) ("In Illinois . . . a petitioner must have [ ] appealed to the Illinois Appellate Court and presented the claim in a petition for leave to appeal to the Illinois Supreme Court.").

First, petitioner's claim that the State knowingly presented perjured testimony is advanced for the first time before this Court. Petitioner also never raised in his PLA before the Illinois Supreme Court his claim that his trial counsel was ineffective for failing to argue that there was no independent basis for the in-court identification. He also failed to present his claim for ineffective assistance of appellate counsel beyond his initial post-conviction petition before the Illinois Circuit Court. Because each of these claims has not been presented for a complete round of state court review, they are procedurally defaulted.

Petitioner may overcome the preclusive effect of the procedural default if he can show that there was either (1) both

cause and prejudice for the defaults; or (2) that without federal habeas review, a "fundamental miscarriage of justice will result." *Coleman v. Thompson,* 501 U.S. 722, 750 (1991) (detailing the two exceptions to overcome procedural default).  Petitioner urges that it was ineffective assistance of his post-conviction counsel that was the "cause" of his procedural default of his claim that his appellate counsel was ineffective for failing to bring a *Strickland* claim against his trial counsel for failing to object to the constructive amendment to the indictment.  As the Seventh Circuit has explained, "[t]he assertion of ineffective assistance as a cause to excuse procedural default in a § 2254 petition, is, itself, a constitutional claim that must have been raised before the state court or be procedurally defaulted." *Smith v. Gaetz*, 565 F.3d 346, 352 (7th Cir. 2009) (citing *Lee v. Davis,* 328 F.3d 896, 899 (7th Cir. 2003)).  Petitioner pursued this claim initially during post-conviction proceedings before the circuit court, but dropped it after the circuit court rejected his petition. He now argues that it was the failure of his post-conviction counsel to pursue the claim against his appellate counsel.  "The result is a tangled web of defaults excused by causes that may themselves be defaulted and require a showing of cause and prejudice– a result that has an 'attractive power for those who like difficult puzzles.'" *Id.* (internal citations omitted).  However, "even assuming that [petitioner]

had preserved his ineffective assistance of appellate counsel claim, he can prevail now only if he establishes that his appellate counsel failed to raise an issue that was both obvious and clearly stronger than the issues he did raise." *Id.* Petitioner cannot accomplish this.

On direct appeal, petitioner's counsel advanced three claims all the way through his PLA: that there was no independent basis for the in-court identification, that there was insufficient proof to convict petitioner beyond a reasonable doubt, and that his due process rights were violated when he was found guilty by association. Raising trial counsel's ineffectiveness would have required petitioner to surmount both prongs of *Strickland v. Washington*, proving both that his counsel's performance fell below an objective level of reasonableness and that he suffered prejudice as result. *Id.* Moreover, any review of counsel's performance "must be highly deferential," as the presumption is that "the challenged action might be considered sound trial strategy." *Id.* at 352-53 (quoting *Strickland*, 466 U.S. 668, 689)). Petitioner argues that trial counsel erred when he failed to object when, in closing arguments, the State prosecutor argued accountability, whereas he was charged with intentional murder and aggravated battery with a firearm. According to petitioner, "this variance was devastating to [his] defense because it exposed him to charges for which he had no notice, thus no

opportunity to prepare a defense for accountability." (Pet. Hab. Pet. at 7.)

"A constructive amendment to an indictment occurs when either the government ... the court ... or both, broadens the possible bases for conviction beyond those presented by the grand jury." *United States v. Folks*, 236 F.3d 384, 390(7th Cir. 2001) ("Permitting an indictment to be constructively amended thus violates the Fifth Amendment, which states in pertinent part that '[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury.' (Internal citation omitted)). This Circuit has held that "the allegations in the indictment and the proof at trial must match in order 'to insure that the defendant is not subject to a second prosecution, and to give the defendant reasonable notice so that he may prepare a defense.'" *Id.* (citing *United States v. McKinney,* 954 F.2d 471, 480 (7th Cir. 19992)). "Constructive amendment typically refers to situations where the trial proof or jury instruction goes beyond the parameters of the indictment in an attempt to cure a defective indictment and this results in a prosecution of an offense different from, or in addition to, that charged by the grand jury." *Lemons v. O'Sullivan*, 54 F.3d 357, 363-64 (7th Cir. 1995).

Under Illinois law, "[i]t is proper to charge a defendant as a principal even though the proof is that the defendant was only

an accomplice ... because accountability is not a separate offense, but merely an alternative manner of proving a defendant guilty of the substantive offense." *People v. Ceja*, 204 Ill.2d 333, 361, 273 Ill.Dec. 796, 816, 789 N.E.2d 1228, 1247 (Ill. 2003)). Thus, even where an indictment charges a defendant for murder as a principal, the State is entitled to prosecute under a theory of accountability. *Id.* Here, even if counsel had pursued this claim in the Illinois state courts, it would not have been successful. Therefore, I cannot say that the failure to object to the so-called constructive amendment of the indictment resulted in ineffective assistance of counsel. A review of the record confirms that trial counsel's strategy was to attack the credibility of the witnesses and the sufficiency of the evidence. Thus, the appellate counsel's decision not to pursue a doomed claim is protected by the presumptions guaranteed to counsel under *Strickland.*

Petitioner also argues that he can demonstrate cause for his failure to present to the state court his claim that the Government knowingly presented perjured testimony in violation of his due process rights. He alleges that he was unable to obtain "proper documentation such as police reports, grand jury testimony, and witness statements," which was an excusable "external impediment." Pet. Reply Br. [#24] at 12. This argument fails, however, because the record indicates that the Government

did provide copies of those reports, and petitioner entered into stipulations about their contents at trial. But even without the records, the Seventh Circuit has held that a petitioner's inability to produce records cannot serve as cause for failure to raise issues. *Montgomery v. Meloy*, 90 F.2d 1200, 1203-04 (7th Cir. 1996).

Therefore, petitioner is unable to overcome the procedural default hurdle for any of the claims subject to that bar. Additionally, petitioner's Fourth Amendment claim that he was unlawfully detained without probable cause is not cognizable here because he had a "full and fair opportunity to litigate his claim that his arrest was illegal." *Cabrera v. Hinsley*, 324 F.3d 527, 533 (7th Cir. 2003). The Seventh Circuit has defined a "full and fair opportunity to litigate" as one where "(1) he has clearly informed the state court of the factual basis for that claim and has argued that those facts constitute a violation of his fourth amendment rights and (2) the state court has carefully and thoroughly analyzed the facts and (3) applied the proper constitutional case law to the facts." *Id.* at 530. Petitioner successfully filed a suppression motion, and there is no indication that the state court was "careless" with petitioner's claim, which resulted in the suppression of the line-up identifications. Therefore, petitioner is not entitled to further review of this claim.

**Actual Innocence Claim**

Petitioner also argues that he was actually innocent, a claim that he argues is a "gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." Pet. for Writ Hab. Corp. [#1] at Ex. 1 p. 3 (quoting *Herrera v. Collins,* 506 U.S. 390, 404, 113 S.Ct. 853 (1993)). He also appears to argue actual innocence as a stand-alone claim. As this Circuit has held, "[a] claim of actual innocence is relevant to determining whether a habeas corpus petition may be brought before a federal tribunal at all; it is not ordinarily cognizable in determining whether the writ should issue." *Milone v. Camp*, 22 F.3d 693, 699 (7th Cir. 1994). Petitioner is correct that a "colorable claim" of actual innocence serves as a "gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits," but "[o]nce the petitioner has persuaded the federal court to hear his constitutional claims, his guilt or innocence of the crime is relevant only insofar as it bears on a constitutional issue or a matter of federal statutory law." *Milone*, 22 F.3d at 699 (internal citations omitted). Thus, this court is not empowered to issue a writ of habeas corpus on the ground that petitioner "is, or might be, innocent of the . . . murder[s] . . . this Court may consider [petitioner's] claim of actual innocence only in determining

whether to excuse his failure to exhaust all state court remedies before pursuing this habeas petition." *Id.* at 700.

To prove actual innocence, petitioner must "demonstrate innocence so convincingly that no reasonable jury could convict," and the Seventh Circuit has noted that petitioners "must have documentary, biological (DNA), or other powerful evidence: perhaps some non-relative who placed him out of the city, with credit card slips, photographs, and phone logs to back up the claim." *Hayes v. Battaglia*, 403 F.3d 935, 938 (7th Cir. 2005). "To be credible," a claim of actual innocence "requires petitioner to support his allegations of constitutional error with new *reliable* evidence– whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence– that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324, 115 S.Ct. 851, 866 (1995) (emphasis added). Because the evidentiary bar is exacting, "claims of actual innocence are rarely successful." *Id.* To meet this demanding burden, petitioner has come forward with four affidavits: one from Corey Strothers, stating that the only reason he "falsely identified" petitioner was because state witnesses Eddie Jackson ("Jackson") and Melvin Jefferson ("Jefferson") threatened the lives of his children; from Darrian Williams and Arthur Mudrow, petitioner offers testimony that petitioner was heavily intoxicated the night before the murders; and one from

14

petitioner's mother, who provides an alibi for his whereabouts during the murder. Petitioner argues that this new evidence serves to "put the whole case in a different light" and that without habeas review a "fundamental miscarriage of justice" will result.

The evidence presented, however, is not sufficient to demonstrate that his conviction was a "fundamental miscarriage of justice" or that with this new evidence "no reasonable fact finder would have found the [petitioner] guilty of the underlying offense." *Hayes*, 403 F.3d at 938. Even if Corey Strothers' affidavit is to be credited, there were other witnesses who identified petitioner as the shooter, including Jefferson, Jackson, and Hardy. Discrediting one of them will not suffice to meet the burden. As for the testimony of the friends with whom he got drunk the night before, that certainly fails to meet exacting standards required here. At most, they corroborate petitioner's whereabouts the night before the murders, but are not alibis for the murders since they do not speak to where petitioner was at the time of the shootings. With respect to his mother's testimony that petitioner was asleep during the murders, that too is insufficient to meet the burden required here. The Seventh Circuit has recognized that "[e]ither family solidarity or threats of harm could produce false alibi testimony, given how rarely prosecutors bring perjury charges against defense

witnesses." *Hayes*, 403 F.3d at 938.  Because none of his newly-acquired evidence is sufficient to convince a reasonable fact finder not to find petitioner guilty of the underlying offenses, he cannot establish actual innocence, which would serve as a means to overcome the procedural defaults.

**No Independent Basis for the In-Court Identification of Petitioner**

Petitioner argues the Illinois Appellate Court erred when it found that State witnesses, Jackson and Jefferson,[1] who identified petitioner in court as the shooter, had independent bases for their identification.  The Illinois Appellate Court correctly identified *Neil v. Biggers*, 409 U.S. 188, 34 L.Ed.2d 401, 93 S.Ct. 375 (1972), as the standard for assessing whether a witness has an independent basis for making an in-court identification.  In *Biggers*, the Supreme Court identified six factors courts must consider when determining whether an in-court identification has an independent basis, including (1) the opportunity of the witness to view the criminal at the time of the crime, (2) the witness's degree of attention, (3) the accuracy of the witnesses' prior description of the criminal, (4) the level of certainty demonstrated by the witness at the time of the confrontation, (5) the length of time between the crime and

---

[1]Petitioner also argues here that Anthony Hardy and Corey Strothers's identification of him as the shooter do not pass Constitutional muster; however, those claims are procedurally defaulted because he did not raise that challenge before the Illinois Appellate Court.  *See* Pet. For Leave To Appeal, Ex. G to Resp. Answer [#20].

the confrontation, and (6) the witness's acquaintance with the
defendant prior to the crime. *Id.* at 199-200. The Illinois
Appellate Court reviewed the trial court's decision in light of
the *Biggers* factors and credited the trial court's finding that
Jackson and Jefferson were "close enough to the defendant for a
sufficient length of time under ideal conditions to adequately
observe him." *Wilson I* at 19. Moreover, the Illinois Appellate
Court found that because "[t]he shootings occurred in the
afternoon on a clear and sunny summer day and the defendant was
observed in an open outdoor parking lot where the witnesses had
unobstructed views of him during the shootings," there was the
requisite clear and convincing evidence that Jackson and
Jefferson offered reliable testimony that petitioner was one of
the shooters. *Wilson I* at 13. That court also noted that Jackson
and Jefferson were focused on petitioner and were familiar with
him before the shootings took place, which enhanced the
reliability of their in-court identification. *Id.* Thus, it was
not unreasonable for the Illinois Appellate Court to uphold the
trial court's decision that upon consideration of the *Biggers*
factors, the State had established that the witnesses had
independent bases for identifying petitioner as the shooter. *See*
*United States v. Clark*, 989 F.2d 1490, 1495-96 (7th Cir. 1993)
(noting that even where an incident lasts only a few moments,
where "the witnesses had an opportunity, albeit not an lengthy

one, 'to obtain a definite impression on an individual's appearance,' there may be ample time to identify the perpetrator).

Nevertheless, petitioner maintains that Jackson's initial failure to identify him to the police and Jefferson's alleged misidentification of petitioner proves that the Illinois Appellate Court erred when it found that the two witnesses had independent bases to identify petitioner. Neither of those arguments are availing. As for Jackson's initial failure to identify petitioner, this Circuit has held that the failure to make an earlier positive identification bears on his credibility. "The weight to be given to their in-court identification is for the [fact finder] to determine." *United States v. Briggs*, 700 F.2d 408, 413 (7th Cir. 1983) (internal citations omitted). Here, the Illinois Appellate Court was charged with evaluating the totality of the circumstances and ultimately found that the trial judge properly assessed the discrepancies in the descriptions that both Jackson and Jefferson offered of the shooters both in court and when they initially spoke to police officers. I cannot say that determination was an unreasonable determination of facts in light of the Constitutional standards enumerated in *Biggers*.

**Insufficient Evidence**

Petitioner also argues that the state court incorrectly found that there was sufficient evidence to support his convictions because none of the witnesses named him as a shooter in their initial statements to police officers and because there was no physical evidence connecting him to the shootings. The Illinois Appellate Court properly identified the standard for reviewing a challenge to the sufficiency of the evidence as enunciated by *Jackson v. Virginia*, 443 U.S. 307, 319 (1979): whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Wilson I* at 16. It found that the evidence was sufficient because both Jackson and Jefferson identified petitioner as the shooter "in conditions permitting them to positively identify him as one of the shooters." *Wilson I* at 17. The Illinois Appellate Court credited the trial court's assessment of the eye witnesses' testimony, noting that both Jackson and Jefferson were subject to rigorous cross-examination, but "both continuously reasserted that they were certain defendant was one of the shooters." *Id.* The Illinois Appellate Court also noted that the trial court considered the witnesses's consistencies, but nevertheless found the witnesses credible. "Due process of law requires that guilt in a criminal proceeding be proved beyond a reasonable doubt." *Milone v. Camp*, 22 F.3d 693, 703 (7th Cir. 1994). "A federal

court engaged in collateral review of a state court conviction must determine 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 703 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)(emphasis in original)). This inquiry is based on record evidence. Like *Milone*, "[i]n this case to state the standard of review is to dispose of the claim: Mere perusal of the Illinois Appellate Court summary of the evidence adduced against [petitioner] at trial reveals that there was sufficient evidence to support his conviction." *Id.* at 703. Here, I cannot say that the Illinois Appellate Court's determination that the evidence was sufficient was objectively unreasonable. Because the trial court was in the best position to weigh the credibility of the witness testimony and it credited the eye witness testimony of Jackson and Jefferson, along with the other witnesses who saw petitioner fleeing the scene or with a gun, I cannot say the Illinois Appellate Court decision was objectively unreasonable or that no rational trier of fact could have found petitioner guilty of the crimes beyond a reasonable doubt.

**Ineffective Assistance of Counsel**

Petitioner also urges that his trial counsel was ineffective for not pursuing his alibi witnesses. To prevail on this claim, petitioner must surmount the two prongs of *Strickland*: (1) that his counsel's performance "fell below an objective standard of reasonableness"; and (2) that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Harris v. Thompson*, 698 F.3d 609, 639 (7th Cir. 2012). Petitioner's failure to make a sufficient showing on either prong dooms his claim and obviates the need for me to consider the other factor before rejecting this claim. *Pole v. Randolph*, 570 F.3d 922, 940 (7th Cir. 2009).

The Illinois Appellate Court correctly cited *Strickland* as the governing standard, and acknowledged that petitioner was required to demonstrate "both that counsel's performance 'fell below an objective standards of reasonableness' and that the deficient performance prejudiced the defense.'" *People v. Wilson*, No, 1-10-0178, 2012 WL 6939803, at * 2 (Ill.App.Ct. Jan. 17, 2012), Resp. Ans., Exh. O, at 2 ("*Wilson II*"). Having identified the correct standard, the court proceeded to analyze petitioner's claim in light of the "strong presumption that counsel's performance fell within the wide range of reasonable professional assistance." *Wilson II* at 2. Ultimately, the Illinois Appellate

Court found that decisions about which witnesses to call at trial fall under the category of trial strategy, which "are generally immune from ineffective assistance of counsel claims." *Id.* That court was unwilling to find petitioner's counsel deficient for failing to pursue petitioner's so-called alibi witnesses, because Arthur Muldrow and Darrian Williams could not testify about petitioner's whereabouts at the time of the shooting, and testimony from petitioner's mother would carry little weight at trial because of her bias. Having found petitioner unable to make a sufficient showing of counsel's deficiency, the Illinois Appellate Court declined to analyze the prejudice component of petitioner's *Strickland* claim.

Petitioner argues that the Illinois Appellate Court's decision is an unreasonable application of *Strickland* because its conclusion ignores that the presentation of his so-called alibi witnesses would have resulted in a different outcome at trial. Petitioner's argument goes to prejudice, however, and does not— nor cannot— cure the fact that counsel's decision to forego calling two witnesses who drank with him the night before the murders does not amount to deficient performance. *See United States v. Ashimi,* 932 F.2d 643, 649 (7th Cir. 1991) ("'Alibi' evidence is unlikely to affect a trial if it does not account for the defendant's presence at the time of the crime.") Similarly, counsel's decision not to call petitioner's mother as an alibi

witness was also reasonable trial strategy since their close relationship provided her motive to lie in order to protect her son. *See Smith v. Gaetz*, 565 F.3d 346, 354 (7th Cir. 2009) ("Rather than asking the court to believe a seemingly flimsy alibi, [counsel] elected to hold the State to its high burden of proof after having attempted to cast some doubt on the State's best identification witness.") Having failed to prove his counsel's deficient performance, petitioner cannot succeed on this claim. Therefore, the decision of the Illinois Appellate Court rejecting petitioner's *Strickland* claim was not unreasonable.

**Guilt By Association Claim**

Petitioner argues that the trial court impermissibly found that he was guilty by association in violation of his due process rights guaranteed by the Fourteenth Amendment. To support this argument, petitioner points to the testimony of William Chambers, which petitioner claims was impermissible hearsay. As an initial matter, the admission of hearsay testimony is a state evidentiary issue that is not cognizable here, because "errors of state law in and of themselves are not cognizable on habeas review." *Perruquet v. Briley*, 390 F.3d 505, 511 (7th Cir. 2004). Moreover, other than a passing reference to the due process clause of the Fourteenth Amendment, petitioner does not point to

any federal authority that creates a Constitutional right based on this error.  He argues that the trial judge deprived him of a fair trial "by lumping together all the evidence" against petitioner and his co-defendants.  The Illinois Appellate Court determined, however, that "there was no indication that evidence offered against one defendant was considered improperly against another, and there was no evidence of antagonistic defenses between the defendant and codefendants." *Wilson I* at 21-22. Under 28 U.S.C. § 2254(e)(1), that factual finding "shall be presumed to be correct," and petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence," which he has failed to do.  Likewise, having failed to assert that the Illinois Appellate Court's decision on this claim was "contrary to, or involved an unreasonable application of, Supreme Court precedent," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," petitioner is not entitled to habeas review of this claim.

### III.

For the foregoing reasons, Petitioner's petition for a writ of habeas corpus is denied.  For the same reasons, I conclude that petitioner has not made a "substantial showing of the denial of a constitutional right" as required by 28 U.S.C. § 2253© and

decline to issue a certificate of appealability.

**ENTER ORDER:**

**Dated:** August 28, 2013

_Elaine E. Bucklo_
**Elaine E. Bucklo**
United States District Judge